USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/22/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC STEVEN KNAPP,

                Plaintiff,

-against-

APRIL KNAPP MARON,

                Defendant.

14-cv-02081 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Marc Steven Knapp brings this action against Defendant April Knapp Maron alleging breach of agreement, unjust enrichment, defamation, and intentional infliction of emotional distress in connection with his purported right to a portion of the proceeds from the sale of his parents' house. Before the Court is Defendant's motion to dismiss Plaintiff's claims for breach of agreement and unjust enrichment. For the following reasons Defendant's motion is GRANTED, without prejudice to filing an amended complaint as to the breach of agreement claim.

## BACKGROUND

    The following facts are taken from Plaintiff's Amended Complaint ("AC") unless otherwise noted, and are accepted as true for the purposes of this motion.[1]

---

[1] Plaintiff was granted permission by the Court to amend his original Complaint to include a claim of intentional infliction of emotional distress during a pre-motion conference held on June 4, 2014. Plaintiff filed his Amended Complaint on June 11, 2014, which included the claim of intentional infliction of emotional distress. Plaintiff also added a claim of unjust enrichment, and removed claims of undue influence and breach of fiduciary duty. Defendant did not object to the filing of the new claim and has filed a motion to dismiss Plaintiff's claims of breach of agreement and unjust enrichment. Therefore, for purposes of this motion, the Amended Complaint will be considered the operative complaint.

Copies mailed/faxed 5/22/2015
Chambers of Nelson S. Román, U.S.D.J.

Plaintiff and Defendant are siblings.  In 1953, their parents, Julia and George Knapp, purchased a house in Huntington Station, New York, where they lived until December 2012. Due to their failing health, Julia and George relocated to an assisted-living facility in Tuckahoe, New York, approximately three-quarters of a mile from Defendant's residence.  Julia died in September 2013.  George died in February 2014.

Plaintiff alleges that in 2003 George and Julia decided to gift their Huntington Station house to their three children – Marc, April, and Janet – as an estate planning measure.  George and Julia would retain a life estate in the property and their three children would receive equal remainder interests.  Nevertheless, because of Plaintiff's pending divorce from his wife, which included a dispute between Plaintiff's wife and Julia involving certain items of personal property, Julia became concerned that any action taken on the property might provide Plaintiff's wife with a claim against it, and decided to put the proposed title transfer on hold.

Before Plaintiff's divorce was finalized and Julia's personal property dispute with Plaintiff's wife was resolved, Plaintiff alleges that Julia proposed a new plan to re-title the Huntington Station house – George and Julia would retain a life estate as originally planned, but would leave the remainder interest only to Defendant and Plaintiff's sister, Janet, rather than to all three siblings.  The transfer would be "contingent on the express understanding and agreement by all involved that, if and when the house was sold, [Plaintiff's sister] and [D]efendant would each pay [P]laintiff an amount equal to one sixth of the selling price of the house," (AC ¶ 19), allaying any concerns Julia had with respect to Plaintiff's wife's potential claims against the property.  In allegedly agreeing to what Plaintiff has defined as the "Sharing Agreement," Janet and Defendant promised George, Julia, and Plaintiff to pay Plaintiff one-sixth of the selling price of the house when it was eventually sold.  George and Julia re-titled the

Huntington Station house in 2004, providing Janet and Defendant with remainder interests and excluding Plaintiff, purportedly in reliance on the promises made in the Sharing Agreement.

The Huntington Station house was sold in December 2013 for $229,000. Plaintiff alleges that Defendant has refused to honor the Sharing Agreement.

Defendant now moves to dismiss Count 1 and Count 2 of the Amended Complaint, arguing that Plaintiff's claims for breach of agreement and unjust enrichment are barred by the Statute of Frauds, codified at N.Y. Gen. Oblig. Law § 5-703.

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*.

Moreover, "[i]n appropriate circumstances, affirmative defenses may be raised in a Rule 12(b)(6) motion to dismiss. A motion to dismiss may be granted if, drawing all reasonable inferences from the complaint in favor of plaintiff, defendant has a valid Statute of Frauds defense to plaintiff's claims." *Messner Vetere Berger McNamee Scmetterer EURO RSCG Inc. v. Aegis Grp. PLC*, 974 F. Supp. 270, 273 (S.D.N.Y. 1997) *aff'd sub nom. Messner Vetere Berger*

*McNamee Schmetterer Euro RSCG, Inc. v. Aegis Grp. PLC*, 186 F.3d 135 (2d Cir. 1999) (internal citations omitted).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12-cv-6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013) (internal citations omitted). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest.'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally."). "However, even pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise 'a right to relief above the speculative level.'" *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and quotations omitted).

**DISCUSSION**

**I.      Breach of the Sharing Agreement**

Defendant argues that the alleged Sharing Agreement is barred by N.Y. Gen. Oblig. Law § 5-703(3), which provides that "a contract to devise real property or establish a trust of real property, or any interest therein or right with reference thereto, is void unless the contract or some note or memorandum thereof is in writing and subscribed by the party to be charged therewith, or by his lawfully authorized agent." In other words, "an interest in real property cannot be created . . . except by a writing expressing the consideration, signed by the party

4

against whom enforcement is sought." *Messner*, 974 F. Supp. at 273 (citing *C&K Realty Co. v. ISFC Fabrics Corp.,* 66 A.D.2d 697 (1st Dep't 1978)).

Specifically, the writing:

must designate all parties, identify and describe the subject matter and state all of the essential terms of a complete agreement.  The memorandum is not required to be contained in one document; separate signed and unsigned writings [can] be read together, provided that they clearly refer to the same subject matter or transaction, contain all of the essential terms of a binding contract, and the unsigned writing [was] prepared by the party to be charged.  At least one document signed by the party to be charged must establish[ ] a contractual relationship between the parties with the unsigned documents referring on their face to the same transaction."

*Post Hill, LLC v. E. Tetz & Sons, Inc.*, 122 A.D.3d 1126, 1127 (3rd Dep't 2014) (internal citations and quotations omitted).  The "full intention of the parties" must be ascertainable from the writings alone, "without recourse to parol evidence." *Dahan v. Weiss*, 120 A.D.3d 540, 542 (2d Dep't 2014) (internal citations and quotations omitted).

Plaintiff concedes that the alleged Sharing Agreement falls within N.Y. Gen. Oblig. Law § 5-703(3) and that a writing is required to satisfy the statute.  (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Memo in Opp'n") at 6.)  Plaintiff contends, however, that he was not required to allege the existence of a writing in his Amended Complaint pursuant to the pleading standards announced in *Twombly* and *Iqbal*, but nevertheless asserts that § 5-703(3)'s writing requirement will be met by supplementing the alleged Sharing Agreement with Defendant's emails, documents currently in Plaintiff's possession, and yet-to-be discovered documents and oral testimony.  In support of this assertion, Plaintiff attaches to his Memo in Opposition a December 31, 2013 e-mail exchange between Plaintiff and Defendant[2] as

---

[2] Although Plaintiff submitted additional materials in support of his Memo in Opposition – a December 31, 2013 e-mail exchange between Defendant and Plaintiff, and an Affidavit from his sister – the Court is not required to convert Plaintiff's opposition to Defendant's motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.  "Where a plaintiff has actual notice of the information contained in extraneous materials and has relied on the documents in drafting the complaint, a court may consider

5

an example of a writing, which when supplemented with other documents and oral testimony, will satisfy the requirements of § 5-703(3). (Pl.'s Memo in Opp'n at 10.)

Plaintiff's arguments are unavailing. N.Y. Gen. Oblig. Law § 5-703(3) requires the existence of a signed writing to enforce an agreement for an interest in real property. The writing must evidence "the full intention of the parties . . . without recourse to parol evidence." *Dahan*, 120 A.D.3d at 542 (2d Dep't 2014). Although Plaintiff contends that he will be able to "tack-together" the Sharing Agreement with e-mails, other documents, and oral testimony to satisfy the requirements of § 5-703(3), by his own admission he requires the use of parol evidence to do so – specifically the alleged terms of the oral Sharing Agreement and other oral testimony. Plaintiff's own statements, as well as the Affidavit of Plaintiff's sister, Janet Theerman, submitted in support of Plaintiff's motion, confirm that the Sharing Agreement was an oral agreement and was not reduced to writing. (Pl.'s Mem. in Opp'n at 6 (" . . . with reference to the oral [sharing] agreement.") and 11 ("This agreement was not put into writing as my mother feared that so doing would defeat her objective of forestalling any potential claim by [Plaintiff's former wife] against the house.").) Moreover, even though Plaintiff proffered evidence of a December 31, 2013 e-mail[3] exchange between Defendant and Plaintiff referencing "[t]he postmortem right to the house" being "ours," (Pl.'s Mem. in Opp'n at 10), the e-mail fails to state any of the essential terms of a complete agreement, and is therefore insufficient to satisfy § 5-703(3) on its own or "tacked-together" with other writings.

---

the document[s] on a motion to dismiss." *Fink v. Time Warner Cable*, No. 08-cv-9628 (LTS), 2009 WL 2207920, at *2 (S.D.N.Y. July 23, 2009) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). As the documents "are integral to the complaint," *Id.* at *2, and Plaintiff asserts that they support the existence of the agreement alleged in the Amended Complaint, the Court may properly consider them on Defendant's motion to dismiss.

[3] "[A]n e-mail will satisfy the statute of frauds so long as its contents and subscription meet all requirements of the governing statute." *Naldi v. Grunberg*, 80 A.D.3d 1, 3 (1st Dep't 2010).

Accordingly, Plaintiff's alleged need to rely on parol evidence in order to satisfy § 5-703(3)'s writing requirement requires dismissal of his breach of agreement claim as barred by the Statute of Frauds.

## II.     Unjust Enrichment

Plaintiff's self-styled unjust enrichment claim seeks enforcement of the Sharing Agreement pursuant to N.Y. Gen. Oblig. Law § 5-703(4), which permits "courts of equity to compel the specific performance of agreements in cases of part performance." Specifically, "[a]n agreement which violates the statute of frauds may nonetheless be enforceable where there has been part performance 'unequivocally referable' to the contract by the party seeking to enforce the agreement." *Barretti v. Detore*, 95 A.D.3d 803, 806 (2d Dep't 2012) (internal citations and quotations omitted). "'Unequivocally referable' conduct is conduct which is 'inconsistent with any other explanation.'" *Id.* (quoting *745 Nostrand Retail Ltd. v. 745 Jeffco Corp.,* 50 A.D.3d 768, 769 (2d Dep't 2008)). "When analyzing part performance for potential invocation of equitable principles, courts should only consider the actions and detrimental reliance of the party seeking enforcement of the contract." *Post Hill, LLC*, 122 A.D.3d at 1128 (internal citations omitted).

Plaintiff contends that if the alleged Sharing Agreement is held unenforceable under the Statue of Frauds, his parents' re-titling of the Huntington Station house in 2004 to grant Defendant and Plaintiff's sister the remainder interests previously discussed serves as the part performance necessary to enforce the agreement. Plaintiff also contends that he detrimentally relied on Defendant's promises when he encouraged his parents to re-title their house without granting him a remainder interest.

As an initial matter, although Plaintiff's parents' actions may be considered as circumstantial evidence in determining whether Plaintiff's performance is explainable only with

7

reference to the existence of the Sharing Agreement, *see Dietze v. Patterson*, No. 84-cv-5682 (MBM), 1989 WL 31483, at *3 (S.D.N.Y. Mar. 30, 1989) (citing *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343 (1977)), it is Plaintiff's actions and detrimental reliance, not his parents' actions as alleged, which are primarily considered when analyzing part performance under § 5-703(4).  *See Post Hill, LLC*, 122 A.D.3d at 1128.

     Despite Plaintiff's contentions, his purported act of encouraging his parents to re-title the Huntington Station house is not "unequivocally referable" to the Sharing Agreement, but serves merely as a preparatory step in anticipation of a future contract with Defendant.  On Plaintiff's own pleadings, after his mother outlined to Plaintiff her alleged plan for re-titling the house, Plaintiff "encouraged [his mother] to proceed with the . . . plan" in an effort to "allay [her] estate planning concerns."  (AC ¶ 20.)  It was only after Plaintiff's encouragement that his parents proceeded with the plan to re-title the house and Defendant made her purported promise under the Sharing Agreement.  (AC ¶ 21.)  Because "the performance undertaken by [P]laintiff is also explainable as [a] preparatory step[ ] taken with a view toward consummation of an agreement in the future," *MacKenzie v. MacKenzie*, 13 A.D.3d 1010, 1010 (3rd Dep't 2004) (internal citations and quotations omitted), § 5-703(4)'s part performance exception does not apply.

     Even assuming, *arguendo*, that Plaintiff's parents' re-titling of the Huntington Station house to grant the alleged remainder interests could serve as the part performance necessary to enforce the Sharing Agreement, Plaintiff's parents' actions are not "unequivocally referable" to the agreement and are not "inconsistent with any other explanation."  It is just as likely that Plaintiff's parents re-titled the house in accordance with the Sharing Agreement as it is that they chose to grant remainder interests only to certain of their children and to exclude Plaintiff.

Without any such unequivocally referable conduct, the alleged Sharing Agreement is barred by the Statue of Frauds.

### III. Leave to Amend

"'[A] pro se complaint is to be read liberally,' and should not be dismissed without granting leave to replead at least once when such a reading 'gives any indication that a valid claim might be stated.'" *Barnes v. U.S.*, 204 Fed. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Although this Court has already provided Plaintiff permission to replead once, the Court will grant Plaintiff's request for an opportunity to amend his complaint to state a valid claim for breach of agreement. The Court reminds Plaintiff that he must do so in accordance with the requirements of § 5-703(3) and without recourse to parol evidence as described herein.

Plaintiff's request to replead his unjust enrichment claim brought pursuant to § 5-703(4) is denied. "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). There is no indication that, if given leave to replead, Plaintiff will be able to allege additional facts to state a claim based on part performance.

### CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's claims for breach of agreement and unjust enrichment pursuant to N.Y. Gen. Oblig. Law §§ 5-703(3) and (4) are DISMISSED in accordance with this Opinion. Plaintiff shall have until 30 days from the date of this Order to amend the Amended Complaint as to the breach of agreement claim. If Plaintiff elects to file a second amended complaint, Defendant shall have until 30 days from the date of Plaintiff's filing to move or file responsive pleadings. If Plaintiff does not file a

second amended complaint, Defendant shall have until 60 days from the date of this Order to file responsive pleadings on the remaining claims. An initial in-person case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for August 20, 2015 at 11:00 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 14.

Dated: May 22, 2015  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge